# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| KENNETH BLACKLEDGE | § | |
| | § | |
| V. | § | CASE NO. 4:14-CV-597 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER OF
## UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits ("DIB"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be REMANDED

## HISTORY OF THE CASE

Plaintiff protectively filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act on March 12, 2012, claiming entitlement to disability benefits due to the hypothyroidism, mild dementia, and a mild cognitive impairment. Plaintiff's application was denied initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) in Dallas, Texas on April 2, 2013. Plaintiff was represented by counsel at the proceeding. At the hearing, Plaintiff, medical experts, Dr. Charles Murphy and Dr. Alvin Smith, and the ALJ's vocational expert, Michael F. Gartman, testified.

On May 23, 2013, the ALJ denied Plaintiff's claim, finding Plaintiff "not disabled." Plaintiff requested Appeals Council review, which the Appeals Council denied on July 25, 2014. Therefore, the May 23, 2013 decision of the ALJ became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

# ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity October 4, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments of obesity, hypertension, cognitive disorder, hyperthyroidism, lumbar arthropathy, cardiomegaly, and osteoarthritis in the knees (20 CFR 404. 1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit up to six hours and stand up to six hours in an eight-hour day, and to lift twenty-five pounds frequently and fifty pounds occasionally (20 CFR 404.1567(c)). He cannot climb ladders, ropes, or scaffolds. He must avoid hazardous machinery, unprotected height, and hazardous work environments. He can understand, remember, make judgments, and carry out the demands of simple unskilled work, respond appropriately to supervisors and coworkers, and respond to routine changed in the work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 16, 1949 and was 62 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has no transferable skills, because he is not able to perform "skilled or semi-skilled" work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 4, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 27-38).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook v.*

*Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987).

At the fifth step, it must be determined whether claimant could perform some work in the national economy. A claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with his medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to

the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

In this case, a determination was made at the Fifth step.

## **ANALYSIS**

Plaintiff has brought three points of error. First, Plaintiff contends that his RFC was inconsistent with the ME's testimony. Second, he argues that the RFC was not based upon all his impairments. And, third, Plaintiff claims that the ALJ failed to weigh all of the medical opinions in evidence.

The ALJ sets forth a detailed history of the medical evidence he considered as follows in his opinion:

Dr. Murphy testified that the claimant would perform the physical requirements of "medium" work (Ex. 1F, 3F, 5F, and 22F).

A physical evaluation dated September 22, 2011, showed no abnormality (Ex. 1F). The claimant was five feet tall, and weighed 265 pounds. He had a normal psychological assessment. He was assessed with thyroid nodules, and an abnormal endocrine study.

A consultative evaluation dated January 9, 2012, showed mild cognitive problems (Ex. 3F). It was opined the claimant would have difficulty understanding complex information, but routine decision-making could be done. Emotional factors did not affect his performance.

The examiner above opined that the claimant may be unable to work (Ex. 3F). However, the undersigned must make a determination based on the preponderance of evidence. This examiner reported that "routine" decision making could be performed.

Dr. Griffin reported that the claimant was permanently disabled from flying in October 2011, due to dementia (Ex. 4F). The claimant reported memory problems in November 2011 (Ex. 5F and 6F). He also complained of anxiety depression.

His physical evaluation was normal in February 2011 (Ex. 6F).

A State Agency consultative physician, Dr. Reddy, reported in April 2012 that the claimant had organic mental disorder (Ex. 7F). The claimant had no limitations in daily activities or social functioning, and moderate limitations in concentration, persistence, and pace. He had never had an extended episode of decompensation. His medication made him feel groggy in February 2012. Neuropsychological testing in January 2012 revealed non-generalized neuropsychological dysfunction primarily manifested by mild executive problems. However, the examiner reported that routine decision-making could be done reliably. His organizational abilities were below expectation, and this impacted his ability to learn (resulting in slow rate of acquisition). However, it was well-retained. There was no evidence of aphasia. His immediate memory was poor. He was able to drive, go out alone, do chores, shop, pay bills, and socialize. Thus, the alleged limitations were partially supported by the medical and other evidence, and the alleged severity and limiting effects from the impairments were not wholly supported. Dr. Reddy's assessment was affirmed by another State Agency consultative physician, Dr. Scales, in July 2012 (Ex. 15F).

Dr. Reddy reported that the claimant would have moderate limitations in the ability to maintain attention, and to perform activities within a schedule, and he was unable to perform "detailed" tasks (Ex. 8F). He was moderately limited in the ability to complete a normal workweek without psychologically based symptoms, and in the ability to respond appropriately to changes in the work setting. This assessment was affirmed by Dr. Scales (Ex. 16F).

Dr. Smith testified that the claimant was unable to perform complex tasks.

The claimant's blood pressure was 120/80 and he weighed 249 pounds in April 2012 (Ex. 10F).

Dr. Norsworthy reported that the claimant had stress and anxiety in October 2011, but his mood was much improved by June 2012 (Ex. 13F and 14F, and 19F). He was well-oriented, and his psychological profile appeared normal. The claimant complained of fatigue in December 2012 (Ex. 18F). No acute abnormalities were noted.

The claimant's physical evaluation was within normal limits in March 2013, according to notes from Dr. Griffin (Ex. 20F).

A report from Dr. Leavens dated March 13, 2013, showed the claimant's memory had gotten a little worse (Ex. 21F). He had symptoms of mild Parkinson's and dementia. His physical evaluation was normal, and he was neurologically intact. He was able to drive, but he was advised to be careful.

The claimant reported loss of hearing after scuba diving in January 2012 (Ex. 22F). He had a past history of ear surgery in the right ear. The hearing loss was severe, but lasted only three weeks. An examination showed no abnormality. There was no evidence of anxiety or depression. He reported dizziness, headache, and hearing loss in March 2012. There was mild hypertrophy in the throat. He was assessed with chronic sinusitis.

The claimant underwent rotator cuff repair in December 2009 (Ex. 23F). He had full range of motion by March 2010.

The claimant was assessed with cognitive disorder in April 2013 (Ex. 24F). His Global Assessment of Functioning was 51. He generally slept well. He was able to care for his own personal hygiene and food preparation. He could get help with household chores, and shop from a list. He could drive, but not in heavy traffic. He does not read the paper very much, but watched the

news on television. He used a list to be reminded him to take his medications. He did not socialize very much or go to church. He had a friend that took him fishing every couple of weeks. He was able to manage finances. His remote and immediate memories were intact, but his recent memory was deficit. He was able to do serial 3's, but not serial 7's. His judgment and reasoning were functional. The MMSE/MMSE-2 scores showed that he had mild to moderate cognitive impairment. His prognosis was guarded.

The claimant was assessed with bilateral knee, right ankle, and left wrist pain in April 2013 (Ex. 25F). He had painful range of motion and positive grind test. His strength was normal. The assessment was osteoarthritis in the hand. X-rays showed joint space narrowing and degenerative changes in the knees, and degenerative changes in the left wrist and right ankle. His gait was normal in December 2012. He reported knee and hip pain in June 2012. Range of motion and strength were normal. He was assessed with osteoarthritis in the left knee in July 2010, and mild degenerative joint disease in the right knee in June 2010. There was modest joint effusion, but no warmth or erythema, and range of motion and strength were normal.

The claimant testified during the hearing that he received 50% of his take-home pay from his prior employment. He stated that he could not pass the physical for flying in order to stay employed. He worked as a pilot, and he flew planes in the Air Force. He did not have a V.A. disability rating from the military. He stated that he had surgery on his shoulders, and he had problems lifting. He also had problems with his knees, and he had one surgery on his knee. He had memory problems, and he could not fly anymore because of his medications.

**Failure to Assign Weight**

Plaintiff contends that the ALJ failed to assign weight to three physicians or psychologists: Hightower, Norsworthy and Dollahite. Even though the opinion and diagnosis of a treating

physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (internal citations omitted). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* The treating physician's opinions are not conclusive. *See Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir. 1999). The opinions may be assigned little or no weight when good cause is shown. *Greenspan,* 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g., Brown,* 192 F.3d at 500; *Greenspan,* 38 F.3d at 237; *Paul,* 29 F.3d at 211. *Newton v. Apfel* specifies that an ALJ is required to consider each of the Section 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist. *Newton v. Apfel*, 209 F.3d 448, 455 56 (5th Cir. 2000)

At best, the Commissioner only obliquely addresses Plaintiff's point or error. For example, the Commissioner argues that the limitations noted by Dr. Dollahite as to prolonged activities is arguably consistent with the ALJ's decision. However, it is also arguably not consistent. And the problem here is that the ALJ assigned no weight whatsoever to the doctor. The doctor notes that prolonged walking and standing are painful (Tr. 469). The doctor also notes effusion, swelling, tenderness, crepitation (all objective symptoms) (Tr. 470). Also noted by the doctor is exostosis which in itself could contribute to some of the problems noted by Plaintiff. Prolonged standing is not in the patient's best interests (Tr. 471). Heavy lifting is not in his best interests (*Id.*). The doctor also notes his hip pain and that it is uncomfortable for Plaintiff to sit for an extended period of time (Tr. 475).

It may well be that the ALJ incorporated these records in his analysis, but there is simply nothing of record as to what weight he assigned . This was error under the *Newton* standard, and the case must be remanded. Moreover, since the Commissioner provided no briefing help on this point of error, the Court must assume that even the Commissioner realized the error. In the end analysis, the result may be the same, but this Court is guided by the law of this Circuit. Because the Court finds that remand is required under this point of error, the Court need not address the remaining points of error.

Pursuant to the foregoing, the Court REMANDS the case to the ALJ to weigh the opinions of Doctors Dollahite, Norsworthy and Hightower and render his decision accordingly.

**SO ORDERED.**

**SIGNED this 17th day of March, 2016.**

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE